FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

03 NOV -5 PM 1:36

U.S. DISTRICT COURT
N.D. OF ALABAMA

MELINDA McMORRIS, )
  )
    Plaintiff, )
  )       CIVIL ACTION NO.
v. )       03-AR-1890-S
  )
NATIONAL NEPHROLOGY ASSOCIATES )
OF ALABAMA, INC., d/b/a )
ALABAMA DIALYSIS SERVICE, )
  )
    Defendant. )

ENTERED
NOV 05 2003

### MEMORANDUM OPINION

Before this court is the motion of defendant, National Nephrology Associates of Alabama, Inc., d/b/a Alabama Dialysis Services ("NNA"), to dismiss the complaint of plaintiff, Melinda McMorris ("McMorris"), pursuant to Rule 12(b)(6), Federal Rules Civil Procedure. McMorris, a former employee of NNA, alleges that NNA violated her rights under 42 U.S.C. § 1981 as amended by the Civil Rights Act of 1991.

#### Background

McMorris, a black female, began her employment with NNA in June 2000. At that time, she signed an arbitration agreement in which she agreed to "submit all claims against NNA...to binding arbitration." The agreement covers "claims for violation of any federal...law...(including but not limited to claims based on the Civil Right Act of 1991...)." The agreement incorporates by reference the "National Nephrology Associates of Alabama Dispute

1

Resolution Program" ("DRP").[1]  The DRP contains a detailed description of the scope and procedures for arbitration of disputes between NNA and its employees.  The DRP specifies that arbitration under the DRP must be in accordance with a document entitled "ADS's Rules for the Mediation and Arbitration of Disputes" ("Rules").[2]  McMorris was terminated in January 2003. She then brought this suit alleging that she was harassed while employed with NNA and eventually terminated by NNA, both of which were in alleged violation of § 1981.

## Analysis

NNA moves to dismiss the complaint arguing that the § 1981 claim is subject to arbitration pursuant to the arbitration agreement signed by McMorris.  The Federal Arbitration Act ("FAA") provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Challenges to the validity of the arbitration agreement itself are considered "gateway matters" that courts, and not arbitrators, decide.  *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. --, --, 123 S. Ct. 2402, 2407 (2003).  In evaluating the validity

---

[1] NNA submitted a document entitled "Alabama Dialysis Services Employment Dispute Resolution Program" and treats it as if it were the "National Nephrology Associates of Alabama Dispute Resolution Program" incorporated by reference in the arbitration agreement.  McMorris has not made issue of it.

[2] No such document was submitted to this court.

2

of the arbitration agreement, federal courts "should apply ordinary state-law principles of contract formation." *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Paladino v. Avnet Computer Tech., Inc.*, 134 F.3d 1054, 1061 (11th Cir. 1998). The applicable state law in this case is Alabama law, which is where McMorris resides and where she was employed by NNA.

McMorris argues that the DRP is an unenforceable contract. She specifically challenges the following clause of the DRP:

> This Program can only be revoked or modified by a writing or writings signed by all parties specifically stating an intent to revoke or modify the Program; provided, however, that ADS may in its discretion choose...[to] change the Rules from time to time so long as they do not conflict with the terms of this Program;...may add additional pre-arbitration dispute resolution steps or procedures; and may add additional entities to the Program's coverage.

McMorris argues that this provision makes the DRP "merely an agreement to agree to indefinite future terms. The defendant may unilaterally change any clause." According to McMorris, the entire agreement is void because it lacks mutual assent. In support of her argument McMorris cites three Alabama cases: *Shacklette v. Drowdy*, 816 So.2d 486 (Ala. Civ. App. 2001), *Grayson v. Hanson*, 843 So.2d 146 (Ala. 2002), and *Mobile Eye Ctr., P.C. v. Van Buren Partnership*, 826 So.2d 135 (Ala. 2002). The cases cited by McMorris are not helpful in resolving this particular issue of arbitrability.

3

In *Shacklette* the issue before the Alabama Court of Civil Appeals was whether the trial court properly granted specific performance to the purchaser of a piece of property. See *Shacklette*, 816 So.2d at 489. The *Shacklette* court said that specific performance should not have been granted because the contract for the sale of the property was too ambiguous. *Id*. The contract did not adequately identify the property; the contract provided that personal items in the house were part of the sale and were to be inventoried and agreed upon, but no agreement was ever executed; the contract was not dated; and the parties did not set a closing date. *Id*. The court concluded that, at best, the parties had an agreement to enter into a future agreement, which is generally not enforceable under Alabama law. *Id*.

*Grayson* involved an action to quiet title. *Grayson*, 843 So.2d at 147. During trial, the parties advised the court that they had reached a settlement. *Id*. The parties agreed to divide the disputed property, with one party giving the other an easement. *Id*. at 149. However, the agreement would not be final until the parties agreed upon the flagging of the easement and the flagging of the boundary lines by a surveyor. *Id*. The *Grayson* court held that the settlement agreement was merely an agreement to later agree. *Id*. at 150-51. Therefore, the settlement agreement was not a valid contract under Alabama law.

4

*Id.*

*Van Buren* involved a controversy over a lease agreement. *Van Buren*, 826 So.2d at 136. Plaintiff brought a declaratory judgment action asking for a declaration that the renewal option in the five-year lease required that defendant give notice that it would not renew the lease and that, because no such notice was given, the lease was automatically renewed for the five-year term. *Id.* The language of the renewal option provided: "'With the *mutual consent* of the parties this lease *may* be renewed for an additional five (5) year period....'" *Id.* at 136-37 (emphasis in original). The court held that the renewal provision "did not operate to automatically renew the lease." *Id.* at 138. The renewal provision was "merely an agreement to agree to a renewal of the lease, which is not enforced in Alabama." *Id.*

These cases demonstrate that agreements to agree in the future are generally not enforceable in Alabama. However, the cases do not help resolve the issue before the court, namely, whether or not the provision allowing NNA to unilaterally alter the Rules and certain DRP provisions makes the DRP an agreement to agree. On the topic of agreements to agree, Professor Williston explains:

> Preliminary negotiations, whether written or oral, do not create a contract. Even though parties have arrived at a definite understanding on the terms of their proposed bargain, if they contemplate a writing as a condition precedent, then their mutual understanding prior to the writing does not form a

5

contract.

27 Williston on Contract § 70:95 (4th ed. 2001). This analysis suggests that agreements to agree are generally considered as preliminary negotiations when a final agreement is contemplated and still needs to be executed. This makes sense in light of the cases cited by McMorris. *Shacklette* involved a contract for the sale of land that was missing material terms. *Shacklette*, 816 So.2d at 489. The court said that, "at best," the parties had an agreement to agree. *Id*. In *Grayson,* the parties specifically said that they did not have a final agreement until the surveyor flagged the property. *Grayson*, 843 So.2d at 149. The provision at issue in *Van Buren* required the mutual consent of the parties for a renewal of the lease to be effective. *Van Buren,* 826 So.2d at 136-37.

As explained above, McMorris challenges the provision that allows NNA (1) to unilaterally change the Rules so long as such changes do not conflict with the terms of the DRP, (2) to add pre-arbitration steps and procedures, and (3) to add additional entities to the coverage of the DRP. This court fails to see how these provisions make the arbitration agreement into an agreement to agree. The arbitration agreement, which incorporates the DRP, is a final agreement with definite terms. There is no future writing contemplated between the parties. In fact, the provision of the DRP that McMorris challenges specifies that the DRP can

only be revoked or modified with a writing signed by all parties. The fact that one of the terms agreed to by the parties gives NNA the flexibility to alter certain aspects of the Rules and the DRP does not somehow convert the contract into an agreement to agree. This agreement is not attacked for one-sidedness or for unconscionability. McMorris raises no objections to the DRP except that it is an agreement to agree. The agreement expressly covers civil rights claims. Therefore, plaintiff's claim must be arbitrated pursuant to the arbitration agreement plaintiff signed.[3]

---

[3] Other courts have considered the validity of provisions similar to the one at issue in this case with mixed results. *Compare Kelly v. UHC Mgmt. Co., Inc.*, 967 F.Supp. 1240, 1258-60 (N.D. Ala. 1997) (holding that an arbitration agreement that allowed the employer to alter, amend, or revoke the arbitration policy at any time with or without notice was enforceable and did not lack mutuality of obligation); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666-68 (6th Cir. 2003) (holding that an arbitration agreement that allowed the employer to alter or terminate the agreement on December 31 of each year upon giving 30 days' notice to its employees was enforceable and lacked neither consideration nor mutuality of obligation); *Bunder v. Murnighan*, 2003 WL 21544236, at *2 (N.D. Ill. July 9, 2003) (holding that the employer's unilateral power to amend the arbitration agreement was not unconscionable); *with Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003) (holding that an arbitration agreement that allowed the employer to alter or terminate the agreement on December 31 of each year upon giving 30 days' notice to its employees was substantively unconscionable); *Dumais v. American Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) (holding that "an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory"); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315-16 (6th Cir. 2000) (holding that an arbitration agreement that gives the employer "unfettered discretion" to choose the arbitral forum and gives the employer the right to alter applicable rules and procedures

The only remaining issue is whether the case should be dismissed or the court should stay the proceeding pending arbitration. The only claim McMorris makes in her complaint is the § 1981 claim, which is subject to arbitration. "Where...all of the issues raised in a complaint must be submitted to arbitration, courts have held that dismissal of an action is appropriate." *Boyd v. Homes of Legend, Inc.*, 981 F.Supp. 1423, 1443 (M.D. Ala. 1997). Despite the fact that all issues raised by McMorris must be sent to arbitration, McMorris asks for a stay. She is concerned that if the court does not maintain supervision over the dispute, NNA could change terms of the Rules and the DRP "without fear of intervention by any other party including the arbitrator." The FAA does not envision the policing role that McMorris asks this court to take. *See* 9 U.S.C. § 3. Even if this court were to stay the action rather than to dismiss it, the court would not monitor the arbitration

---

without any obligation to notify the employee is unenforceable due to a lack of mutuality of obligation); *Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 938-40 (4th Cir. 1999) (holding that the employer's arbitration agreement, which included a provision allowing the employer to unilaterally terminate the agreement and to alter the rules governing the arbitration, when taken as a whole was so one-sided that it created a unenforceable sham system); *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1132-33 (7th Cir. 1997) (Cudahy, J., concurring) (arguing that the employee manual that imposed arbitration on its employees was illusory because the employer retained the right to change or revoke any term in the manual and because the manual stated that it was not a contract or promise of any kind). None of these cases consider whether or not provisions similar to the one at issue should be deemed agreements to agree.

proceedings. If, at some future date, McMorris' fears are realized, she can raise her concerns to the arbitrator or to this court under the judicial review provisions in the FAA. *See* 9 U.S.C. §§ 9-12.

### Conclusion

By separate order, this court will grant NNA's motion to dismiss without prejudice.

Done this ___5th___ day of November, 2003.

　　　　　　　　　　　　　　　　　　／s／ William M. Acker, Jr.
　　　　　　　　　　　　　　　　　　WILLIAM M. ACKER, JR.
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE